IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
c/o Department of Justice
Washington, D.C. 20530,

                       Plaintiff,

   v.

BRIAN L. ROBERTS
c/o Comcast Corporation
One Comcast Center
1701 John F. Kennedy Blvd.
Philadelphia, PA 19103-2838,

                  Defendant.

Civil Action No.

COMPLAINT FOR CIVIL PENALTIES FOR FAILURE TO COMPLY
WITH THE PREMERGER REPORTING AND WAITING REQUIREMENTS
OF THE HART-SCOTT-RODINO ACT

     The United States of America, Plaintiff, by its attorneys, acting under the direction of the

Attorney General of the United States and at the request of the Federal Trade Commission, brings

this civil antitrust action to obtain monetary relief in the form of civil penalties against Defendant

Brian L. Roberts ("Roberts"), alleging as follows:

NATURE OF THE ACTION

     1.  Roberts violated the notice and waiting requirements of the Hart-Scott-Rodino Act

with respect to acquisitions of voting securities of Comcast Corporation ("Comcast").  In

October of 2007, Roberts failed to file the required notification with the Federal Trade

Commission and Department of Justice before acquiring Comcast voting securities, and he

continued to acquire Comcast voting securities through the end of April of 2009.  On August 25,

2009, Roberts made a corrective filing for acquisitions of Comcast voting securities that he had made in violation of the Act.

## JURISDICTION AND VENUE

2.   This Complaint is filed and these proceedings are instituted under Section 7A of the Clayton Act, 15 U.S.C. § 18a ("HSR Act" or "Act"), added by Title II of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, to recover civil penalties for violations of that section.

3.   This Court has jurisdiction over the Defendant and over the subject matter of this action pursuant to Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

4.   Venue is properly based in this District by virtue of  Defendant's consent, in the Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in this District.

## THE DEFENDANT

5.   Defendant Roberts is a natural person with his principal office and place of business care of Comcast Corporation, One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838.  Roberts is CEO and Chairman of the Board of Comcast.  Roberts is engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1).  At all times relevant to this complaint, Roberts had total assets in excess of $13 million.

## OTHER ENTITIES

6.   Comcast is a corporation organized under the laws of Pennsylvania with its principal place of business at One Comcast Center, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-

2838.  Comcast is a leading provider of cable television services.  At all times relevant to this complaint, Comcast was engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1).  At all times relevant to this complaint, Comcast had total assets in excess of $130.3 million.

### THE HART-SCOTT-RODINO ACT AND RULES

7.  The HSR Act requires certain acquiring persons and certain persons whose voting securities or assets are acquired to file notifications with the federal antitrust agencies and to observe a waiting period before consummating certain acquisitions of voting securities or assets.  15 U.S.C. § 18a(a) and (b).  These notification and waiting period requirements apply to direct or indirect acquisitions that meet the HSR Act's thresholds, which are adjusted annually.  During most of 2007, the HSR Act's reporting and waiting period requirements applied to some transactions that would result in the acquiring person holding more than $59.8  million, and all transactions where the acquiring person would hold more than $239.2 million of the acquired person's voting securities and/or assets, except for certain exempted transactions.  During most of 2008, those thresholds were $63.1 million and $252.3 million, and during most of 2009, those thresholds were $65.2 million and $260.7 million.

8.  The HSR Act's notification and waiting period are intended to give the federal antitrust agencies prior notice of, and information about, proposed transactions.  The waiting period is also intended to provide the federal antitrust agencies with an opportunity to investigate a proposed transaction and to determine whether to seek an injunction to prevent the consummation of a transaction that may violate the antitrust laws.

9.  Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), rules were promulgated to carry out the purposes of the HSR Act.  16 C.F.R. §§ 801-803 ("HSR Rules"). The HSR Rules, among other things, define terms contained in the HSR Act.

10.  Section 801.2(a) of the HSR Rules, 16 C.F.R. § 801.2(a), provides that "[a]ny person which, as a result of an acquisition, will hold voting securities" is deemed an "acquiring person."

11.  Section 801.1(a)(1) of the HSR Rules, 16 C.F.R. § 801.1(a)(1), provides that the term "person" means "an ultimate parent entity and all entities which it controls directly or indirectly."

12.  Section 801.1(a)(3) of the HSR Rules, 16 C.F.R. § 801.1(a)(3), provides that the term "ultimate parent entity" means "an entity which is not controlled by any other entity."

13.  Pursuant to section 801.13(a)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(1), "all voting securities of [an] issuer which will be held by the acquiring person after the consummation of an acquisition"     including any held before the acquisition     are deemed held "as a result of" the acquisition at issue.

14.  Section 801.1(c)(1) of the HSR Rules, 16 C.F.R. § 801.1(c)(1), states that "hold" means "beneficial ownership, whether direct, or indirect through fiduciaries, agents, controlled entities or other means."

15.  Section 802.21(a) of the HSR Rules, 16 C.F.R. § 802.21(a), provides generally that where a person acquired voting securities of an issuer after filing under HSR and observing the waiting period, additional acquisitions of voting securities of the same issuer are exempt from the reporting requirements for a period of five years from the expiration of the waiting period, so long as the further acquisitions do not "meet or exceed a notification threshold . . . greater than the greatest notification threshold met or exceeded in the earlier acquisition."

4

16.   Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation.  For violations occurring before February 10, 2009, the maximum amount of civil penalty is $11,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996); 74 Fed. Reg. 857 (Jan. 9, 2009).  For violations occurring on or after February 10, 2009, the maximum amount of civil penalty is $16,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 74 Fed. Reg. 857 (Jan. 9, 2009).

## DEFENDANT'S TWO PRIOR VIOLATIONS OF THE HSR ACT

17.   Prior to November 18, 2002, Roberts was the ultimate parent entity ("UPE") of Comcast.  As UPE of Comcast, Roberts was the acquiring person with the obligation to file notification under the HSR Act for any acquisitions by Comcast that met the thresholds under the HSR Act.

18.   On July 30, 1999, Roberts made a corrective filing under the HSR Act for acquisitions by Comcast of voting securities of Internet Capital Group, Inc. in February 1999, related to a reorganization from an LLC to a corporation, which had been consummated without filing and observing the waiting period as required by the HSR Act.  In a letter accompanying

that corrective filing, Roberts acknowledged that the transaction was reportable under the HSR Act but asserted that the failure to file and observe the waiting period was inadvertent.

19.  On January 10, 2001, the Premerger Notification Office of the Federal Trade Commission ("Premerger Office") notified Roberts that it would not recommend seeking civil penalties for the acquisitions by Comcast of voting securities of Internet Capital Group, Inc.  The Premerger Office noted that "Mr. Roberts is accountable for instituting an effective program for all of the entities he controls to ensure full compliance with the Act's requirements."

20.  On February 23, 2000, Roberts made another corrective filing under the HSR Act for acquisitions by Comcast of voting securities of Susquehanna Cable Co. and certain of its subsidiaries in January 2000, which had been consummated without filing and observing the waiting period as required by the HSR Act.  These acquisitions were "secondary acquisitions" (see 16 C.F.R. § 801.4) resulting from Comcast's acquisition of Lenfest Communications, Inc., for which Comcast had made the appropriate HSR filing.  In a letter accompanying that corrective filing, Roberts acknowledged that the acquisitions were reportable under HSR but asserted that the failure to file and observe the waiting period was inadvertent.

21.  On May 10, 2000, the Premerger Office notified Roberts that it would not recommend seeking civil penalties for the acquisition by Comcast of the voting securities of Susquehanna Cable Co. and its subsidiaries.  At that time, the Premerger Office sent Roberts copies of Introductory Guides I and II to the premerger notification program.

<u>VIOLATIONS</u>

22.  In February 2002, Roberts filed under the HSR Act to acquire Comcast voting securities in connection with a merger agreement between Comcast and AT&T Corp.  The

waiting period on this filing expired on September 16, 2002, and the transaction closed on November 18, 2002.  As a result of this transaction, Roberts was no longer the UPE of Comcast.

23.  Pursuant to the HSR Rules, Roberts could acquire additional shares of Comcast up to the next notification threshold for five years after the expiration of the waiting period, or until September 16, 2007, without having to file again under the HSR Act.

24.  Comcast issued restricted stock units ("RSUs") to Roberts as part of his compensation as Chairman and CEO of Comcast.  RSUs are a right to receive Comcast voting securities at a fixed point in the future, conditional upon continued employment with the company and/or meeting certain performance targets.  The RSUs themselves do not entitle a holder to vote for Comcast's board of directors or to receive dividends, but voting rights and the right to dividends do arise upon vesting of the units and receipt of the voting securities.

25.  On March 9, 2008, Roberts received 24,750 shares of Comcast Class A Common Stock as a result of RSUs vesting.

26.  Roberts had beneficial ownership of the Comcast Class A Common Stock he received on March 9, 2008.

27.  Comcast Class A Common Stock shares are voting securities within the meaning of the HSR Act.

28.  As a result of the March 9, 2008, transaction described above, Roberts held more than $126.2 million in Comcast voting securities.

29.  Although he was required to do so because more than five years had passed since the expiration of the waiting period triggered by his 2002 HSR fiing, Roberts did not file under the HSR Act prior to acquiring the Comcast voting securities on March 9, 2008.

7

30.  Roberts acquired additional shares of Comcast voting securities through the vesting of RSUs through April 28, 2009.  In total, Roberts acquired approximately 334,560 shares of Comcast voting securities through the vesting of RSUs from March 9, 2008 through April 28, 2009.  Roberts did not file under the HSR Act or observe the waiting period prior to any of these acquisitions.

31.  In addition to acquiring Comcast voting securities through RSU's, Roberts acquired Comcast voting securities through his 401(k) account via reinvestment of dividends and short-term interest earned by that account after September 16, 2007, as set forth in paragraphs 32-35. Roberts is the beneficial owner of the voting securities held in his 401(k) account.

32.  On October 22, 2007, Roberts' 401(k) account acquired additional Comcast voting securities on his behalf.

33.  As a result of the October 22, 2007, transaction described above, Roberts held more than $119.6 million in Comcast voting securities.

34.  Although he was required to do so because more than five years had passed since the expiration of the waiting period triggered by his 2002 HSR filing, Roberts did not file under the HSR Act prior to acquiring the Comcast voting securities on October 22, 2007.

35.  From October 22, 2007, to April 28, 2009, Roberts' 401(k) account acquired approximately 3,700 shares of Comcast voting securities.  Roberts did not file under the HSR Act or observe the waiting period prior to any of these acquisitions.

36.  In June 2009, lawyers for Comcast sought to determine whether any of Roberts' previous acquisitions of Comcast voting securities required notification to the federal antitrust agencies pursuant to the HSR Act.

37.   On August 25, 2009, Roberts made a corrective filing under the HSR Act for Comcast voting securities he had acquired.  The waiting period on the filing expired on September 24, 2009.

38.   Roberts was in continuous violation of the HSR Act during the period beginning on October 22, 2007, when he acquired Comcast voting securities that resulted in him holding voting securities valued in excess of $59.8 million, and ending on September 24, 2009, when the waiting period expired.

PRAYER

WHEREFORE, Plaintiff prays:

1.   That the Court adjudge and decree that each of Defendant Roberts' acquisitions of Comcast voting securities beginning on October 22, 2007, and ending in April, 2009, was a violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Roberts was in violation of the HSR Act each day from October 22, 2007, through September 24, 2009.

2.   That the Court order Defendant Roberts to pay to the United States an appropriate civil penalty as provided by the HSR Act, 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996); 74 Fed. Reg. 857 (Jan. 9, 2009).

3.   That the Court order such other and further relief as the Court may deem just and proper.

4.   That the Court award the Plaintiff its costs of this suit.

Dated:  December 16, 2011

FOR THE PLAINTIFF UNITED STATES
OF AMERICA:


 /s/ Sharis A. Pozen                              /s/ Roberta S. Baruch
Sharis A. Pozen                              Roberta S. Baruch
D.C. Bar No. 446732                          D.C. Bar No. 269266
Acting Assistant Attorney General            Special Attorney



                                              /s/ Kenneth A. Libby
Department of Justice                        Kenneth A. Libby
Antitrust Division                           Special Attorney
Washington, D.C.  20530


                                              /s/ Karen Espaldon
                                             Karen Espaldon
                                             D.C. Bar No. 456714
                                             Special Attorney

                                             Federal Trade Commission
                                             Washington, D.C.  20580
                                             (202) 326-2694